UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

HUGO GOMEZ

CRIMINAL ACTION

NO.: 19-00038-BAJ-EWD

RULING AND ORDER

Before the Court are Defendant's **Motions to Suppress (Doc. 29 and 45)**, seeking to suppress evidence obtained as the result of an alleged illegal stop and search. Defendant asks the Court to rule that the stop and search were impermissible, that the dog search was not conducted by a properly trained canine, and that the canine handler acted improperly.

I. BACKGROUND

On February 6, 2019, around 9:16 p.m., Iberville Parish Sheriff's Office ("IPSO") Criminal Patrol Agent Tyson Mire ("Agent Mire") observed a grey Kia with a Texas license plate driving on the left side of the highway on Interstate 10 near the 138-mile marker in Iberville Parish. Agent Mire testified that the vehicle was driving too slowly in the passing lane, requiring other vehicles to pass it on the right side. Agent Mire conducted a traffic stop on the Kia for the violation of La. R.S. 32:71.[1] After checking licenses and vehicle registration, Agent Mire identified Defendant as

---

[1] La. R.S. 32:71(B)(c) provides, "Upon all multilane highways, no vehicle traveling in the left-hand lane shall be driven at a slower speed than any vehicle traveling to its right on the same roadway."

1

the driver, and Defendant's girlfriend, Estrella Cantu Juarez, as the passenger. The vehicle in which Defendant was traveling was a rental car.

When asked why he rented the car, Defendant responded that his personal car burned too much gas. When Agent Mire asked about their travel plans, Defendant told him that they were traveling to Destin, Florida to visit Defendant's friend. Defendant stated that he did not know how long he would be staying in Destin or the name of the hotel in which he was staying. Defendant claimed that he did not have a motel reservation. Upon further questioning, Defendant admitted to Agent Mire that he had prior drug arrests, and that he was on parole in Texas following a conviction for theft. (Doc. Id. at p. 2).

Agent Mire asked to search the vehicle, but Defendant declined to give consent. Agent Mire then deployed his certified narcotic detector dog, Exon, to conduct a free-air sniff around the exterior of the vehicle. Exon alerted to the presence of a narcotics odor. Agent Mire then advised both Defendant and his girlfriend of their *Miranda* rights. He testified that Defendant then stated, "anything you find in the car is mine." IPSO deputies later arrived on the scene and conducted a search of the vehicle. A black leather bag was found on the driver's side floorboard. The bag contained approximately 4902 grams of methamphetamine and a loaded .357 Caliber H&K pistol. After the search, Defendant was again advised of his *Miranda* rights. Upon being confronted with the evidence from the search, Defendant claimed ownership of the bag and all contents within the bag. The stop, search, and arrest spanned approximately one hour.

Defendant was indicted for one count of possession with the intention to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C § 841(a)(1), one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(a).

On July 8, 2019, Defendant filed a Motion to Suppress, seeking to exclude evidence obtained as a result of the alleged illegal stop and search. Later, Defendant filed a second Motion to Suppress, re-alleging the same grounds in the first motion, but also asserting that the canine search was flawed. Defendant asserts that the training and prior certifications of the dog were insufficient to ensure an accurate response, and that the canine handler acted inappropriately.

## II. DISCUSSION

### A. Vehicle Stop

Warrantless searches are per se unreasonable under the Fourth Amendment unless the Government proves that the search meets one of the established exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). The Government bears the burden of proving that a search is valid when no warrant has been issued. See *Welsh v. Wisconsin*. 466 U.S. 740, 749-50 (1984).

Defendant argues that the traffic stop was unlawful because there was no probable cause to believe that a traffic violation had occurred. The Government argues that the traffic stop of Defendant was objectively reasonable and based on probable cause to believe Defendant had committed a traffic violation.

3

The stop of a vehicle and detention of its occupant constitutes a "seizure" under the Fourth Amendment to the United States Constitution. *United States v. Brigham*, 382 F.3d 500,506 (5th Cir. 2004). The legality of a traffic stop is examined under a test established in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, courts analyze traffic stops pursuant to a two-prong inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the officer's actions were reasonably related in scope to the circumstances which justified the interference in the first place. For a traffic stop to be justified, an officer only needs reasonable suspicion that some sort of illegal activity has occurred or is about to occur. *United States v. Lopez-Moreno*, 420, 430 (5th Cir. 2005). A traffic violation may provide the basis for a reasonable stop of a motorist. See *Whren v. United States*, 517 U.S. 806 (1996).

The Court finds that the stop was lawful under *Terry*. Agent Mire testified that he stopped the vehicle because he saw it traveling in the passing lane, causing other cars behind him to pass to the right. Thus, Defendant violated La. R.S. 32:17, thereby satisfying the first element of *Terry*. When Agent Mire stopped Defendant, he asked for his license, registration, and about Defendant's travel itinerary. The Government asserts that Agent Mire's questions about Defendant's travel itinerary were within the scope of his investigation for the traffic violation. In *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004), the officer asked numerous questions to the driver and passenger about their travel plans for over eight minutes before initiating a license and registration check. The United States Court of Appeals for the Fifth Circuit has held that such questioning was fully within the scope of a lawful

4

traffic stop. The Fifth Circuit has also found that an officer may ask about the purpose and itinerary of a driver's travel plans during the traffic stop. See *United States v. Gonzalez*, 328 F.3d 755,758-59 (5th Cir. 2003). "Such questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made." *United States v. Brigham*, 382 F.3d at 508. Here, Agent Mire questioned Defendant about his destination, lodging plans, and reason for his travel. Agent Mire engaged in this line of questioning because a few days prior to this traffic stop, he encountered a decoy vehicle maneuver in the same area, during which a large amount of drugs were discovered.[2] His suspicions aroused to the possibility of another decoy vehicle maneuver, Agent Mire's continued questioning revealed that Defendant did not have a motel reservation, although he claimed he was staying in a motel, and that Defendant's girlfriend was unable to corroborate the travel itinerary. Moreover, the Government admitted video evidence from Agent Mire's dashboard camera that corroborated the discussion. Agent Mire's actions of checking licenses and vehicle registration, and questioning the travel itinerary of Defendant and his girlfriend are reasonably related in scope to the investigation of a traffic violation. Thus, the Court finds that the second element of *Terry* is satisfied.

**B. Reasonable Suspicion**

---

[2] Agent Cooper testified that he and Agent Mire were "decoyed" a few days prior to the traffic stop. Agent Cooper explained that a "decoy" occurs when there are two or more vehicles traveling together, and one vehicle will commit a traffic offense in front of an officer to enable the other vehicle carrying the load of drugs or currency to proceed undetected.

Defendant argues that even if the traffic stop was lawful, the continuation of the stop was not. The Defendant further argues that Agent Mire had no just cause to detain him after clearing his driver's license and registration, and that there were no specific and articulable facts on which to base reasonable suspicion. Defendant asserts that the stop lasted 15 minutes longer than necessary. The Government asserts that the extension of the traffic stop was based on reasonable suspicion. The Government further asserts that Defendant's answers to Agent Mire's questions provided the reasonable suspicion required to continue the stop. Defendant cites *Rodriguez v. United States*, 575 U.S. 348 (2015) for support.

A traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. *United States v. Rodriguez*, 575 U.S. at 350. In *Rodriguez*, the defendant challenged his traffic stop because the officer prolonged the stop "by seven to eight minutes for a dog sniff." Generally, a stop that is prolonged beyond the time reasonably required violates the Fourth Amendment's ban on unreasonable seizures. *See Id.* at 350. An exception to this is reasonable suspicion. The Supreme Court held that absent reasonable suspicion, police may not extend an otherwise completed traffic stop in order to conduct a dog sniff or take any other investigation action. *Id.* at 355. Officers must base their reasonable suspicion on "specific and articulable facts," not merely "inarticulate hunches" of wrongdoing. *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999). To determine whether an officer has reasonable suspicion, the Supreme Court requires courts to consider the totality of the circumstances to

determine whether the officer has a particularized and objective basis for suspecting that a crime was committed. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Courts may also consider the inferences made by officers from their own specialized training and experience that may elude an untrained person. *Id.* at 273.

Agent Mire testified that the stop took approximately thirty minutes before he decided to extend the stop to conduct a drug detection dog sniff. When asked if this was a normal duration for a stop, Agent Mire further testified that the Defendant's travel itinerary seemed deceptive and inconsistent because the Defendant failed to directly answer his questions. The Government asserts that reasonable suspicion arose when Defendant could not tell Agent Mire how long he was staying in Destin and because his answers to questions about his lodging vacillated between staying with a friend and staying in a motel. The Government further asserts that when Agent Mire questioned Juarez, Defendant's girlfriend, about the couple's travel plans, she too was not certain of their duration of the visit to Destin, the name of Defendant's alleged friend, and whether they were staying with the friend or in a motel. The Government admitted video evidence of the discussion with the Defendant and Juarez. Agent Mire testified that the circumstances of the stop, coupled with Defendant's answers to questioning, led him to believe that Defendant may have been a drug courier. Agent Mire testified that, based upon his specialized training and experience, drug couriers are commonly instructed to drop off the drugs at a fixed location, but are not provided with the names of any individuals who will receive the

drugs upon arrival. Agent Mire became further suspicious when Defendant could not tell him where his friend lived or whether he had previously visited the friend.

Additionally, Agent Mark Cooper ("Agent Cooper"), who assisted Agent Mire at the traffic stop, testified that a few nights prior to the incident, they encountered a decoy vehicle maneuver in the same area. Doc. 71 at p. 8-10. Agent Cooper testified that because of this situation, they were on alert for another potential decoy vehicle. Thus, Agent Mire had reason to be alert to suspicious activity and did not act arbitrarily when detaining Defendant.

The Court finds that the duration of Defendant's traffic stop was not unreasonable under the facts and circumstances, and that the Government has established that Agent Mire had reasonable suspicion to extend the traffic stop. Agent Mire's reasonable suspicion was based on specific and articulable facts, not merely a "hunch" of criminal activity. Defendant's inconsistent answers, including the uncertainty as to details of his travel plans, Juarez's inconsistent answers, Defendant's previous arrests, and the use of a rental car are actions consistent with the conduct of a drug courier, thereby providing reasonable suspicion to justify the extension of the traffic stop.

### C. Drug Detection Dog Search

Defendant argues that if the Court finds that the extension of the stop was lawful and that the subsequent dog search was constitutionally permissible, the items seized must be suppressed because the exterior dog search was flawed. Defendant argues that Exon, Agent Mire's drug detection dog, failed to independently alert on

8

the presence of the drugs and that any purported indication was prompted intentionally by Agent Mire. Defendant further argues that Exon's lack of training and flawed certifications rendered him incapable of ensuring an accurate response to the presence of drugs in the car. The Government contends that the dog sniff was conducted utilizing a properly certified dog, and that the dog was not prompted to alert to the presence of drugs in Defendant's car.

### 1. Drug Detection Dog's Reliability

The Supreme Court has found that training and testing records can sufficiently establish the reliability of a drug detection dog. *Florida v. Harris,* 568 U.S. 237 (2013). The Supreme Court held that "evidence of a dog's satisfactory performance in a certification or training program can provide sufficient reasons to trust his alert." *Id.* at p. 246. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume that the dog's alert provides probable cause to conduct a search. *Id.* "The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id.*

Each party provided expert witness testimony regarding Exon's training. The Government provided Sergeant Wendell Nope ("Sgt. Nope"), who has served as the training supervisor for the Utah State Police Academy for thirty years. To date, Sgt. Nope has trained over 3,000 officer and dog teams and holds numerous certifications. *See* Gov. Exhibit 6. Sgt. Nope has also written several articles on drug detection dogs and has provided expert witness testimony in more than thirty cases. Sgt. Nope has

9

been qualified as an expert in the field of K9 and drug detection dog handling, training, certification, deployment, and auditing at numerous criminal trials. Doc. 75 at p. 4.

Defendant provided Kyle Heyen ("Heyen") as an expert. Heyen was a police officer for the Laramie Police Department in Wyoming from 1979 through 1987. Heyen was a trainer of law enforcement dogs and their handlers for over twenty-five years before retiring in 2004. Heyen is now the founder and president of Detector Dogs International Inc., through which he provides consultation and expert witness testimony on various civil and criminal issues regarding law enforcement dogs. *See* Def. Exhibit 12. Heyen has been qualified as an expert witness in both state and federal cases despite his testimony that he is no longer a member of any canine association and has not attended a seminar or any formal training in nearly thirty years. When asked by Defense counsel why he hasn't attended a training since 1990 and whether he thinks knowing how to train and evaluate a dog is a perishable skill that is lost over time, Heyen testified "I don't train them [dogs]. I evaluate what they are doing. I do that on a regular basis throughout the course of a year." When asked by Defense counsel whether it was true that he has not trained a dog in 18 years, Heyen testified "a dog is going to act as a dog does, a handler is going to act as a handler acts. They've been doing that same type of action and behavior since long before we trained them to do anything."[3]

---

[3] The Government has urged the Court to find that Heyen is not qualified to be an expert due to his failure to participate in continuing education seminars in his field.

Agent Mire testified that Iberville Parish requires certification for dog handler teams. He further testified that he and Exon received an annual certification from the National Narcotics Detector Dog Association ("NNDDA") in 2018 and 2019. *See* Gov. Exhibits 1, 2-a, and 2-b. Agent Mire further testified that he and his partner conducted monthly training for Exon. On cross-examination, Defendant's counsel pointed out that Agent Mire and Exon did not produce training records evidencing narcotics training from January 2018 to July 2018. Agent Mire testified that the training records submitted at the hearing pertained to narcotics training. Agent Mire further testified that although narcotics training was not conducted during these months, Exon did receive other types of K9 training.

On direct examination, Sgt. Nope testified that he reviewed the training records of Agent Mire and Exon and found that both had performed training exercises successfully. In his expert report, Sgt. Nope described Exon as having "extensive experience as a Narcotics Detector Dog" because Exon has been well-trained and reliable since 2014. Plaintiff's Exhibit 7, at p. 4-5. Sgt. Nope also concluded that Exon has demonstrated a 98% accuracy factor while handled by Agent Mire. Id. at p. 5.[4]

Heyen testified that Agent Mire should have done more in his maintenance and training of Exon to show that Exon is "well maintained."[5] Heyen testified that

---

[4] In Gov. Exhibit 7 at p. 16, Sgt. Nope described his review of Agent Mire and Exon's training records. Sgt. Nope reported that the statistics from the training records reveal that during the period in which Agent Mire and Exon have worked together, Exon achieved 61 successful drug alerts and one false drug alert. Sgt. Nope concluded that in controlled training environments, Exon had achieved a reliability factor of 98%.

[5] Heyen failed to explain what he meant by the term "well maintained." Defendant did not offer any clarification of the term in his post-hearing brief.

11

Exon did not exhibit any focused intensity in the search. Heyen also concluded that Exon did not actually alert to the presence of drugs because Exon sat and stood up several times during the encounter. Heyen further concluded that Exon never pinpointed the source, and that he was cued by Agent Mire to alert to the presence of drugs.

The Court finds that the expert testimony provided by Sgt. Nope substantially outweighs the testimony of Heyen. As discussed above, Heyen has retired from training police dog teams, has not attended any seminars or other training sessions in several years, and does not belong to any canine association. He has not published any scholarly articles in recent years, and Heyen showed a strong reluctance towards dedicating time towards these activities in the future as he expressed that it was not necessary.

However, Sgt. Nope still serves as a training supervisor for police dog teams, regularly attends trainings and seminars, publishes articles, and maintains active memberships in canine associations. Sgt. Nope has dedicated significant time to staying abreast of changes in this field.

The Court finds that Exon's training records have established his reliability to a satisfactory degree. The training records reflect that Exon has maintained proficiency in his performance since 2014. Although Exon did not receive narcotics training from January 2018 to July 2018, this gap in training does not preclude a finding of reliability because Exon's training records reflect successful narcotics training every month from August 2018 through February 1, 2019; thus, Exon's skills

were demonstratively sharp leading up to the traffic stop. [6] *See* Defendant's Exhibit 5. The Court also finds that Exon was qualified to make a drug alert because he received annual certifications from the NNDDA, a bona fide certifying organization, in both 2018 and 2019, and maintained his proficiency in monthly trainings in between the NNDDA certification tests. Defendant has failed to rebut this presumption of reliability. See *Florida v.* Harris, 568 U.S. at 247.

## 2. Whether Exon was Cued to Alert to the Presence of Drugs

Now that the Court has determined that Exon is was sufficiently qualified and trained, the Court must now determine whether Exon was cued by Agent Mire to alert to the presence of the narcotics.[7] The Government contends that Exon was not cued and showed no signs of being cued. Defendant argues that video evidence shows that Exon was cued by Agent Mire because Exon repeatedly looked back at Agent Mire for confirmation that drugs were present in Defendant's car. Defendant further argues that Sgt. Nope published an article in which he noted that a drug detection dog looking back at his handler is an indication of cuing by the handler.

Sgt Nope clarified that this statement was made in the context of an unfocused, unmotivated dog. Sgt. Nope concluded that the video of the encounter revealed that Exon's sniff of Defendant's vehicle was conducted intensely and without distraction. In the video, Exon wagged his tail, which Sgt. Nope testified is a sign that he is

---

[6] In *Florida v. Harris*, the Supreme Court found that the drug detection dog was reliable although his certification was expired after a year because the sheriff's office continued to train the dog to keep his skills sharp. Records confirmed that the dog performed at the highest level leading up to the sniff of the defendant's vehicle.

[7] According to Black's Law dictionary, a cue is a communication such as "body language and tone that communicates perceptual information in a social exchange."

interested and excited to engage in the search. Sgt. Nope further testified that Exon appeared to take on his task willingly and without distraction, and that when Exon looked back at Agent Mire, it was a natural trait of Exon when alerting on drugs. Sgt. Nope further testified that because Exon was totally focused on the vehicle, any cueing that would have happened would not have been detected by Exon due to his fixation on the vehicle. Sgt. Nope further testified that he did not see any cueing actions by Agent Mire in the video, and that Exon gave his final alert to the presence of drugs by sitting next to Defendant's car, as he is trained to do.

Further, Defendant has failed to identify or describe any specific action or conduct by Agent Mire that could be construed as cueing Exon to alert to the presence of drugs in Defendant's vehicle, either through testimony at the hearing or in the post-hearing briefs. In his report, Heyen opined that Agent Mire "altered his search pattern, consciously or unconsciously, numerous times during the sniff," resulting in Exon sitting multiple times around Defendant's vehicle. Heyen does not conclude, however, that this action was cueing. Rather, he asserts that these actions are the result of a team that is not well trained or reliable. Heyen lists general examples of cueing in his report, but never asserted that Agent Mire engaged in any of the actions listed. *See* Defendant's Exhibit 13-a at p. 11.

The evidence shows that Exon exhibited behavior indicating that he was acutely focused on the task of searching for the presence of drugs in the Defendant's rental car, and that the alert was not cued by Agent Mire. The video depicts Agent Mire leading Exon on the passenger side of Defendant's vehicle, then around the car.

Throughout the search, Exon exhibited signs of a motivated and focused drug detection dog, such as wagging his tail, sniffing intently around the vehicle, and making his final alert. Nothing in the video showed that Agent Mire made any signals or movements that could be construed as cueing Exon to give his final alert. Thus, the Court must conclude that Exon properly and independently alerted to the presence of drugs in Defendant's vehicle.

Accordingly,

**IT IS ORDERED** that Defendant's Motions (Docs. 29, 45) are **DENIED**.

Baton Rouge, Louisiana, this 13th day of March, 2020.

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**